**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Respondent, | ) ) ) | |
| vs. | ) ) | Case No. 05 C 4319 |
| ERIC WILLIAMS, | ) ) ) | |
| Movant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On May 5, 2006, the Court held an evidentiary hearing on Eric Williams' motion under 28 U.S.C. § 2255. For the reasons stated below, the Court grants Williams' motion. This constitutes the Court's findings of fact and conclusions of law.

Williams pled guilty to a charge of conspiracy to possess over fifty grams of crack cocaine with intent to deliver. In his plea agreement, Williams admitted, among other things, that on April 10, 2002, his co-defendant Leander Smith and another man, who was a government informant, negotiated the purchase of two ounces of crack. Williams instructed the informant to come to a liquor store, where he met with Smith. Smith took the man in a car to another location, where he obtained a package of fifty-five grams of crack and gave it to Williams, who in turn handed it to the informant. Williams also stipulated that he had engaged in other uncharged criminal conduct, specifically, that on December 4, 2001, he had sold the informant fifty-four grams of crack. Finally, Williams admitted that in April 2002, he stored a loaded handgun above the ceiling tiles in his bedroom to provide security and protection for himself and his drug trafficking activities.

The mandatory minimum prison sentence for the charged offense was ten years, or 120 months. In the plea agreement, Williams and the government agreed that under the Sentencing Guidelines, the total offense level for Williams' offense and the stipulated uncharged conduct was thirty-one, taking account of the amount of crack cocaine involved, Williams' possession of the handgun, and his acceptance of responsibility. The parties also agreed that Williams' criminal history category was IV, on the grounds that he had two prior criminal convictions, one of which resulted in a prison sentence, and that he had been released from prison less than two years before the offense of conviction. The Probation Office, however, ascertained that Williams had been given a sentence of probation, not imprisonment, for one of the offenses, and as a result it found that his criminal history category was III, based on the two prior convictions and the fact that he was on probation at the time of the offense of conviction. Neither side objected to that finding at the time of sentencing.

On June 24, 2004, the Court sentenced Williams to 135 months imprisonment, the low end of the applicable Sentencing Guidelines range of 135 to 168 months. The Court based the sentence on the then-accepted proposition that the Guidelines appropriately were applied in mandatory fashion. Among other things, the Court commented to Williams that "it is a very severe penalty that you are facing for this, and we could all argue about whether it is too much or too little, but there is no way around it. It is what it is." Sentencing Tr. 4.

The same day that the Court imposed sentence in Williams' case, June 24, 2004, the Supreme Court ruled in *Blakely v. Washington,* 542 U.S. 296 (2004), that a state sentencing system similar to the federal Sentencing Guidelines violated the Sixth Amendment to the extent it permitted courts to increase sentences in excess of a statutory maximum pursuant to factual

findings made by judges rather than juries. In January 2005, the Supreme Court, applying *Blakely* to the federal Sentencing Guidelines, concluded that increase of a sentence under the Guidelines based on facts found by a judge rather than a jury violated the Sixth Amendment rights of federal criminal defendants. *United States v. Booker,* 543 U.S. 220 (2005). The Court remedied the violation by invalidating the statutory provision that mandated a sentence within the Guidelines unless a basis for a departure existed. Henceforth, the Sentencing Guidelines range would be one of several factors for a court to consider in determining an appropriate sentence. *See generally* 18 U.S.C. § 3553(a).

Due to clerical delay, the judgment in Williams' case was not entered until nearly four weeks after imposition of sentence, on July 19, 2004. Williams' retained counsel Bernard Shelton did not, in the intervening period, return to the Court to contend that Williams' sentence had been imposed illegally, that is, in violation of the Sixth Amendment and *Blakely*. Nor did Shelton advise Williams of the decision in *Blakely* or how that decision might affect his case – even though Shelton had ongoing contact with Williams due to the continued pendency of a state criminal charge in which he was representing Williams.

Williams did not file a notice of appeal, a subject we will discuss in greater detail later. On or about July 10, 2005, Williams placed in the prison mail a motion under 28 U.S.C. § 2255, contending that his Sixth Amendment rights had been violated. The motion was received by the Clerk on July 27, 2005. Based on the his motion and the briefs later filed to support it, Williams' claim has three parts: the Court erred applying the Sentencing Guidelines in mandatory fashion; Shelton, Williams' counsel, rendered constitutionally ineffective assistance in failing to argue and to advise Williams that mandatory application of the Sentencing Guidelines violated the

Sixth Amendment; and Shelton failed to file a notice of appeal after Williams asked him to do so, in violation of Williams' Sixth Amendment right to effective assistance of counsel. The Court dismissed the first of these claims on August 8, 2005, relying on *McReynolds v. United States,* 397 F.3d 479 (7th Cir. 2005). After appointing counsel to represent Williams, the Court held an evidentiary hearing on the second and third claims, at which Williams, his sister-in-law Carolyn Williams, and his former lawyer Shelton testified.

Carolyn Williams testified that she was present in court during the sentencing. After the sentencing, she was present for a conversation between Williams and Shelton. Williams asked whether Shelton was going to appeal; Shelton said that the court of appeals "wouldn't consider it." Williams asked why; in response, Shelton referred to the "evidence they had against him." Tr. 5-6, 9. Williams expressed disagreement with Shelton's assessment. Tr. 10.

Williams testified that after the Court imposed sentence, he spoke with Shelton outside the courtroom. Williams recalled that the Court had advised him after imposing sentence regarding his right to appeal; Williams said he asked Shelton if an appeal of the sentence should be filed. Shelton replied that it would do Williams no good to appeal "because they have too much against [him]" and that an appeal would be a waste of money. Tr. 14-15, 16, 24-25. Williams said he told Shelton he wanted to appeal anyway, but Shelton did not respond. Tr. 16, 19-20. Williams testified that at the conclusion of the conversation, he did not believe Shelton would file a notice of appeal. Tr. 15.

Shelton testified that his law practice involves mainly criminal defense work, as well as real estate matters and a small amount of civil work. Tr. 27. He testified that Williams did not express any desire to appeal either before, during, or after the sentencing. Tr. 34. He denied that

4

Williams had asked him to file a notice of appeal following the sentencing hearing. Tr. 35, 36. Shelton stated that the only question that Williams "might have asked" after the sentencing was where he would be assigned to serve his imprisonment. Tr. 35-36. In other words, Shelton effectively denied that there was *any* discussion about an appeal.

Shelton testified that he was unaware at the time of the sentencing hearing that the *Blakely* case was pending in the Supreme Court and that he was still unaware of *Blakely* as of late July 2004, during the ten day period after entry of the judgment in which a notice of appeal could be filed. Tr. 36-37. Shelton did not learn about *Blakely* until late October or early November 2004 – over four months after the Supreme Court issued the decision – and then he learned about it from another client. Tr. 37. Shelton testified that after the June 2004 sentencing in the present case, he had two contacts with Williams' mother due to a state court criminal case in which Shelton was also representing Williams, and he stated that at some point after he learned about *Blakely,* Williams' mother asked whether the case would impact her son. Tr. 37. He replied that he would check on it and asked her to get back to him, but he heard nothing more from her. Tr. 38-39.

On cross examination, Shelton repeated that Williams had no conversation with him after the sentencing about an appeal. Tr. 41-42. Shelton also testified, however, that he believed the plea agreement precluded an appeal. Tr. 42. In this regard, Shelton was flat wrong. Tr. 42-43. The plea agreement made it clear that Williams could appeal. In addition, the Court specifically inquired of Shelton and the prosecutor at sentencing whether the plea agreement precluded appeal; upon being told that it did not do so, the Court specifically advised Williams that he had the right to appeal. Tr. 42-43.

5

Upon inquiry by the Court, Shelton testified that he had no other federal criminal cases pending between the June 2004 sentencing in this case and October-November 2004, when he said he had first learned about *Blakely*. Tr. 46. Shelton acknowledged that he received a copy of the judgment in Williams' case after it was entered, Tr. 47, which, as the Court noted earlier, was on July 19, 2004.

Based on Shelton's demeanor and his testimony as a whole, his account of his encounter with Williams following the sentencing hearing was neither reliable nor believable. Among other things, Shelton quite obviously had a flawed memory of the events: he erroneously recalled that the plea agreement barred Williams from appealing.

In particular, the Court did not find believable Shelton's denial that Williams had spoken with him after the sentencing about appealing from the sentence in his case. Conversely, the Court found credible the testimony of both Williams and his sister-in-law that Williams spoke with Shelton about appealing. Among other things, given the Court's specific advice to Williams following imposition of sentence that Williams had the right to appeal, it stands to reason that Williams would have made inquiry of Shelton about this after the sentencing hearing concluded. The Court also found credible Williams' testimony that Shelton discouraged him from appealing and that he told Shelton he wanted to appeal anyway. It is undisputed that Shelton did not file a notice of appeal following his receipt of the judgment in Williams' case.

The government contends that Williams had no expectation that his lawyer would file an appeal. That may be true, but if so, it is only because Shelton declined Williams' request that he file an appeal. Williams made it clear to Shelton after the sentencing that he (Williams) wanted to appeal. Given that request, Shelton's Sixth Amendment duty as counsel required him to file a

6

notice of appeal on Williams' behalf.  *Roe v. Flores-Ortega,* 528 U.S. 470, 478 (2000).  Yet Shelton declined to file an appeal.  This was, by itself, a violation of Williams' Sixth Amendment right to effective assistance of counsel.

Shelton's apparent rationale for declining to appeal – that it would be a waste of time – reveals a separate, and equally significant, violation of Williams' Sixth Amendment rights, albeit one not specifically alleged in Williams' *pro se* motion:  Shelton lacked, at the relevant time, basic knowledge regarding the applicable law.  Shelton – like the Court – was not required to anticipate the *Blakely* decision, and thus Williams' right to effective assistance of counsel was not violated by Shelton's failure to raise the Sixth Amendment issue posed by the then-pending *Blakely* case at the time of the sentencing.  But by the time Shelton received the judgment in the mail, sometime after July 19, 2004, *Blakely* had already been on the books for nearly a month.  A reasonable criminal defense attorney would have been aware of *Blakely's* potential impact on the Sentencing Guidelines at that point.

Given this state of affairs, a reasonable lawyer in Shelton's position would have reached out for Williams – who Shelton was still representing at the time (in the pending state court case) – to advise him that his earlier rationale for advising against an appeal was no longer correct.  *Cf. Roe v. Flores-Ortega,* 528 U.S. at 480 (counsel has obligation to consult with defendant about an appeal "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.").  Yet Shelton failed to do so; this omission fell below an objective standard of reasonableness.  In view of Shelton's failure to abide by Williams' express request to file an appeal, however, this

separate Sixth Amendment violation is not necessary to the Court's decision to grant Williams' § 2255 motion.

The government does not take the position that Williams was not prejudiced even if Shelton disregarded his request to appeal. Correctly so, as *Roe v. Flores-Ortega* makes it clear that a criminal defense lawyer who fails to follow through on a defendant's request to appeal violates the Sixth Amendment without regard to the probability of success on appeal. *Roe v. Flores-Ortega,* 528 U.S. at 477 (citing *Rodriquez v. United States,* 395 U.S. 327 (1969), and *Peguero v. United States,* 526 U.S. 23, 28 (1999)). Even were this not so, Williams suffered prejudice from Shelton's failure to abide by his request to appeal. It is clear that Williams would have been entitled to raise the *Blakely* issue on appeal even though he had not raised it in this Court, and that he would have been entitled to a remand under *United States v. Paladino,* 401 F.3d 471 (7th Cir. 2005), had his appeal been pending at the time *Booker* was decided in January 2005. And his appeal almost surely would have been pending at that time. Had Shelton filed a notice of appeal in late July 2004, the Court of Appeals likely would have ended up having to appoint new counsel to represent Williams on appeal. The resulting delay, even if it was a modest one, would have resulted in the appeal being pending when *Booker* was decided.[1]

## Conclusion

For the reasons stated above, the Clerk is directed to enter judgment granting Williams' § 2255 motion. The appropriate remedy in this regard is for the Court to vacate and re-enter the judgment in Williams' criminal case. The Court will do so promptly. Appointed counsel in

---

[1] The Court expresses no view as to what it would have concluded in a *Paladino* remand. Neither side has argued that such an assessment is material to our decision on the § 2255 motion, and accordingly that question is appropriately left for another day.

Williams' § 2255 case is directed to file a notice of appeal from the re-entered criminal judgment in timely fashion following its re-entry.

_____
                          MATTHEW F. KENNELLY
                          United States District Judge

Date:   May 31, 2006